# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# RICHMOND DIVISION

| | |
|---|---|
| In re:<br><br>CHASEN'S BUSINESS<br>INTERIORS, INC.<br><br>Alleged Debtor. | )<br>)<br>)<br>) Case No. 09-36686-KRH<br>)<br>)<br>) |

## MOTION TO DISMISS OR ABSTAIN

The alleged debtor, Chasen's Business Interiors, Inc. ("Chasens"), by counsel, appearing specially[1] pursuant to 11 U.S.C. §§ 303 and 305, moves this Court to dismiss or abstain from hearing, the involuntary petition filed by TowneBank, Guardian Fund II-Twin Oaks 2, LLC ("Guardian") and Amcase, Inc. ("Amcase") (the "Petitioners"), and to award Chasens its costs and attorney's fees incurred in this proceeding. In support thereof, Chasens states as follows:

### I. FACTUAL BACKGROUND

1. On October 14, 2009, the Petitioners filed with this Court an involuntary petition for relief (the "Involuntary Petition") under Chapter 7 of Title 11 of the United States Bankruptcy Code against Chasens. The three Petitioners allege that they are commercial creditors of Chasens owed a total amount of $313,985.92 pursuant to claims of breach of contract.

---

David K. Spiro, Esquire (VSB #28152)
Nathaniel L. Story, Esquire (VSB #77365)
HIRSCHLER FLEISCHER, P.C.
The Edgeworth Building
2100 East Cary Street
Post Office Box 500
Richmond, VA 23218-0500
(804) 771-9500
(804) 644-0957 (fax)
   *Counsel for Chasen's Business Interiors, Inc., appearing specially*

---

[1] At this time, Counsel is representing Chasens only in defense of the instant proceeding and has not agreed to represent Chasens in a bankruptcy case should this Court enter an order for relief.

2.    Prior to the filing of the Involuntary Petition, Chasens was a privately-held corporation founded in 1979 as a commercial contract dealer of office furniture products throughout Virginia. It had over one-hundred employees, represented over 200 manufacturers, and currently has more than 120 creditors. Chasens ceased operations on or about July 27, 2009.

3.    Chasens largest creditor is Manufacturers and Traders Trust Company, previously Provident Bank ("M&T Bank"), which holds a first security interest on all of Chasens' assets and holds a standard lockbox service agreement with Chasens. Due to the nature of the account structure, any Chasens' wires or credit card transactions were forwarded directly into an operating account which was swept daily by M&T Bank. Copies of the M&T Bank loan agreement and security agreement are attached collectively as Exhibit A.

4.    Beginning in 2005, systematic accounting errors caused an understatement in Chasens' cost of goods sold and an overstatement in inventory, masking operating inefficiencies and preventing Chasens from making adjustments in its operations to bring costs in line with revenues.

5.    Chasens undertook every effort to remedy the effects of the accounting errors once they were revealed. These efforts included lengthy negotiations with M&T and its largest creditors and the consideration of reorganization under a Chapter 11 bankruptcy. However, the tightening of credit markets, together with the unwillingness of M&T and Chasens' key supplier to extend credit, precluded Chasens from attempting to restructure under Chapter 11.

6.    In the summer of 2009, when it became apparent to Chasens that reorganization was not realistic, Chasens negotiated with M&T Bank and its largest supplier, Herman Miller[2], to wind up its affairs. Accordingly, Chasens liquidated its assets through sale (the "Sale") to its

---

[2] Chasens and Herman Miller were parties to a Dealer Agreement dated 8/23/02. Herman Miller notified Chasens, in April of 2009, that Chasens was out of compliance with the Dealer Agreement by not maintaining a positive tangible net worth.

2

largest manufacturer of office furniture, HMI Liquidating Company, an affiliate of Herman Miller ("HMI"). Notably, more than half of Chasens' prior employees were able to regain employment under HMI through the Sale and Herman Miller re-assigned its distributing agreement for the territory to American Office. Proceeds of the Sale were paid directly to the secured creditor, M&T Bank. The Sale was approved by M&T Bank and closed on or about July 27, 2009. Following closing, Chasens still owed and continues to owe approximately $1.3 million to M&T Bank.

7. TowneBank's payment of $265,038.04 for furniture manufactured by Kimball Office Furniture was deposited in June of 2009, prior to the Sale, and was swept up by M&T Bank pursuant the lockbox agreement with M&T Bank.[3]

8. As a result of the Sale, Chasens has liquidated its entire inventory and virtually all assets, including all inventory, accounts receivable, and purchase orders. Attached as Exhibit B is a copy of the Asset Purchase Agreement. Attached as Exhibit C is a payoff letter from M&T Bank dated July 27, 2009.

9. Despite the fact that Chasens has over one hundred creditors, several of which hold claims larger than the TowneBank claim, only one party apart from the Petitioners has commenced state-court litigation, in the form of an unlawful detainer to obtain possession of certain leased premises.

## II. ARGUMENT

10. The Court should dismiss or abstain from hearing the Involuntary Petition because: (1) the Petitioners have failed to serve Chasens in accordance with the Bankruptcy Code and Rules; (2) the Petitioners have failed to satisfy the requirements of 11 U.S.C. § 303;

---

[3] Knowing that it would not likely be able to fulfill the TowneBank purchase order, Chasens requested M&T to return this sum to TowneBank, but M&T refused the request.

and (3) the best interests of Chasens and its creditors would be best served by dismissal or abstention of this proceeding under 11 U.S.C. § 305. In the event that the Court dismisses the Involuntary Petition, Chasens should be awarded its attorney's fees and cost incurred in connection with this proceeding.

### A. Petitioners have failed to serve Chasens in compliance with the Bankruptcy Code and Rules.

11. Rule 1010, which governs service of an Involuntary Petition and summons, provides that "[t]he summons shall be served with a copy of the petition in the manner provided for service of a summons and complaint by Rule 7004."

12. Rule 7004(a) authorizes personal service. Rule 7004(b) provides that "service may be made within the United States by first class mail postage prepaid as follows:

. . . .

> (3) Upon a domestic or foreign corporation or upon a partnership or other unincorporated association, by mailing a copy of the summons and complaint *to the attention* of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant (emphasis added).

13. The summons must be mailed within 10 days of the issuance of service of process. Rule 7004(e); see also In re Accident Claims Determination Corp., 146 B.R. 64, 66 (Bankr. E.D.N.Y. 1992) (vacating an order on an involuntary petition because petitioners failed to mail the summons within 10 days of the issuance of service of process).

14. In Accident Claims the court dismissed an involuntary petition when the summons was issued on April 29 and was mailed on May 12, fourteen days after its issuance. Despite the fact that the debtor's answer was also untimely, the court dismissed the petition based on the untimely mailing.

15. The clerk issued the instant summons on the Involuntary Petition on October 15, 2009.

16. Petitioners mailed the summons and petition on October 30, 2009, <u>fifteen days</u> after its issuance.

17. Service of the summons and Involuntary Petition is untimely and the Involuntary Petition should be dismissed upon this basis.

18. Additionally, Petitioners failed to mail the summons and Involuntary Petition to the attention of an officer, managing or general agent, or to any other agent. Petitioners simply addressed the petition to "Chasens Business Interiors, Inc."

19. At the time of the mailing of the summons and Involuntary Petition Chasens had ceased its affairs at the address to which Petitioners mailed the summons.

20. Petitioners have failed to serve the summons and Involuntary Petition in the time or manner required by the Federal Bankruptcy Rules. Chasens has been improperly served and this Court should dismiss the Involuntary Petition.

**B. The Involuntary Petition should be dismissed because the Petitioners' claims are subject to a bona fide dispute in contravention of 11 U.S.C. § 303(b)(1).**

21. The Involuntary Petition is also flawed because the Guardian and TowneBank's claims are subject to bona fide disputes regarding the amounts due.

22. The term "bona fide dispute" is not defined under the Bankruptcy Code. Courts have held that a bona fide dispute "clearly entails some genuine, existing conflict." <u>In re Cohn-Phillips, Ltd.</u>, 193 B.R. 757, 763 (Bankr. E.D. Va. 1996) (citing <u>Atlas Machine & Iron Works, Inc. v. Bethlehem Steel Corp.</u>, 986 F.2d 709, 716 (4th Cir. 1993). Stated differently, a bona fide dispute exists when a petitioning creditor's claim is subject to a genuine issue of material fact as to the debtor's liability or the amount of the claim. <u>In re: Regional Anesthesia Associates, PC</u>,

360 B.R. 466 (Bankr. W.D. Pa. 2007). The Court need not resolve the outcome of a bona fide dispute, but rather, need only ascertain the dispute's presence or absence. Id. at 477.

23. Bona fide disputes exist as to the amounts which Guardian alleges it is owed. Guardian alleges that Chasens is indebted to it in the amount of $46,384.38 (the "Guardian Claim"). Upon information and belief the Guardian Claim stems from a lease of Chasens' Richmond location.

24. Despite its claim in the Petition for $46,384.38, Guardian filed a summons for unlawful detainer against Chasens for rent in the amount of $36,840.69 for rent due for June 1, 2009 through August 1, 2009, with interest at 18% from August 26, 2009, and $98,733.00 for rent acceleration. The summons for unlawful detainer is attached as Exhibit D.

25. The discrepancy between the two alleged amounts reveals a bona fide dispute as to the amount of the claim. Additionally, upon information and belief Guardian has included amounts in excess of those it may recover under its claim for breach of contract due to a failure to mitigate damages.

26. Lessors have the duty to make "reasonable efforts to mitigate damages resulting from the breach, and to the extent that the seller fails to do so, he may not recover the additional damages incurred." Forbes v. Rapp, 269 Va. 374, 380, 611 S.E.2d 592, 595 (2005). An assertion that an injured party has failed to mitigate damages is an affirmative defense. Id.

27. To the extent that it has failed to mitigate damages, Guardian's claim presents a bona fide dispute that may not support an Involuntary Petition.

28. Bona fide disputes also exist as to the amounts which TowneBank alleges it is owed. TowneBank alleges that Chasens is indebted to it in the amount of $265,038.04 for

breach of contract, specifically, the failure to provide office furniture manufactured by Kimball Office Furniture.

29. Upon information and belief Kimball Office Furniture has provided TowneBank with the requested furniture with a substantial credit. Despite this credit, TowneBank has failed to adjust its claim against Chasens accordingly.

30. As stated in <u>Regional Anesthesia Associates, PC</u>, the Court need not determine the outcome of the aforementioned bona fide disputes, but rather, need only ascertain the mere presence of such disputes. Here, genuine issues of material fact exist as to the amounts allegedly due from Chasens to Guardian and TowneBank.

31. Due to the existence of a bona fide dispute as to the amounts due Chasens, this Court should dismiss the Involuntary Petition pursuant to 11 U.S.C. § 303 (b)(1).

**C. Dismissal of the Involuntary Petition serves the best interests of Chasens and its creditors.**

32. Assuming *arguendo* that the Involuntary Petition was properly served and meets the requirements of 11 U.S.C. § 303(b)(1), the Court should dismiss or abstain from hearing the Involuntary Petition, as doing so would better serve the interest of the creditors and Chasens.

33. Chasens has sold virtually all of its assets and still remains indebted to its largest secured creditor M&T Bank for approximately $1.3 million. A bankruptcy proceeding would therefore provide no benefit to Chasens' creditors. It would, however, create needless expense for the debtors[4] and creditors and give rise to false hopes of repayment. The Bankruptcy Code and case law support abstention in this case.

34. Pursuant to 11 U.S.C. § 305(a)(1):

---

[4] As a practical matter, Chasens has no funds to pay for bankruptcy representation or manpower to do the work. Moreover, since Hirschler Fleischer represented Chasens in the sale of its assets to HMI, Hirschler Fleischer would likely be conflicted out of such representation.

7

> (a) The court, after notice and a hearing, may dismiss a case under this title, . . . or may suspend all proceedings in a case under this title, . . . at any time if—
>
> (1) the interests of creditors and the debtor would be better served by such dismissal or suspension; . . . .

35. The decision whether to dismiss or abstain from hearing an involuntary bankruptcy proceeding lies within the Court's discretion. In re Williamsburg Suites, Ltd., 117 B.R. 216, 218 (Bankr. E.D. Va. 1990).

36. Abstention is most appropriate in an involuntary case. In re M. Egan Co., Inc., 24 B.R. 189 (Bankr. W.D. N.Y. 1982) (citing In re Pine Lake Villae Apartment Co., 16 B.R. 750 (Bankr. S.D.N.Y. 1982).

37. Bankruptcy courts consider several factors in determining whether dismissal of an involuntary bankruptcy is in the best interest of the creditors and the debtor, including, but not limited to:

   a. The necessity of federal proceedings to achieve a just and equitable solution;

   b. The expense and efficiency of federal proceedings compared with proceedings in another forum;

   c. The purpose or motivation of the parties seeking to remain in bankruptcy court;

   d. Whether the debtor and creditor are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; and

   e. The possible prejudice to parties.

In re Fortran Printing, Inc., 297 B.R. 89, 94-95 (Bankr. N.D. Ohio 2003); see also In re Spade, 258 B.R. 221, 231 (Bankr. D. Colo. 2001); In re Audio Visual Workshop, Inc., 211 B.R. 154

8

(Bankr. S.D. N.Y. 1997); In re Williamsburg Suites, Ltd., 117 B.R. 216, 218 (Bankr. E.D. Va. 1990); In re Tarletz, 27 B.R. 787 (D. Colo. 1983).

38. Courts in the Eastern District and in other jurisdictions consistently abstain from jurisdiction in cases similar to Chasens'. In In re Williamsburg Suites, Ltd., this Court considered the economic and administrative efficiency of bringing an involuntary bankruptcy proceeding against a debtor-partnership in light of the creditors' available remedies under state law. The debtor in that case was in the final stage of dissolution at the time that a creditor filed the involuntary petition. The Court noted the time-consuming and expensive actions that the debtor would have to take if the bankruptcy continued, whereas state law provided an efficient forum for the winding up of the debtor-partnership. Based on these factors, the Court held that it was "highly unlikely that the winding up of the partnership would proceed more smoothly in bankruptcy than it would following the state law procedures" and the interests of the debtor and creditors were best served by abstention. Id. at 220.

39. The court's abstention from jurisdiction under § 305(a) in In re Audio Visual Workshop, Inc., 211 B.R. 154 (Bankr. S.D. N.Y. 1997), presents a striking parallel to the instant case. In Audio Visual Workshop, a retail debtor considered reorganization until it became clear it could not meet its debts. The debtor then chose to execute a bulk sale agreement to its only secured creditor. The debtor's landlord and two smaller creditors subsequently joined in an involuntary petition and contested the validity of the bulk sale. Id. at 156. The court considered all of the above-mentioned factors. Of the over 200 creditors, several of which held large claims, only three joined the petition. The court held that petitioners were able to contest the bulk sale in state court as a voluntary or fraudulent conveyance, but bankruptcy court was the improper forum to do so. Id. at 164. Significantly, it reasoned that the petition was duplicative of the bulk

sale, which achieved an equitable distribution to creditors, and that the bulk sale was a less expensive out-of-court arrangement, which best served the interests of all creditors. Id. at 165. The argument for abstention in the present case is far more compelling. First, the Sale to HMI has already taken place. Indeed, it closed uneventfully almost four (4) months ago. Second, unlike in the Audio Visual Workshop case, no sales proceeds remained after the Chasens sale.

40. To a greater extent than the debtor in Williamsburg Suites, Ltd., Chasens has wound up its affairs and has nothing significant for a bankruptcy trustee to administer. Chasens has consummated the Sale and effected an orderly liquidation of its entire inventory, all of its accounts receivable, its purchase orders, and virtually all of its office equipment and vehicles. A bankruptcy proceeding at this point would yield nothing to Chasens' creditors while creating needless expense, administrative inefficiency, and empty hopes of repayment for its numerous creditors.

41. To free up money for the unsecured creditors, a bankruptcy trustee would have to conclude that M&T Bank was not properly secured and should not therefore have received the sales proceeds to the exclusion of other creditors. This is simply not possible because M&T Bank was properly perfected.

42. Alternatively, a trustee would have to prove that the sale to HMI was fraudulent based on the consideration and should therefore be avoided under federal or state fraudulent transfer law. To prevail, the trustee would need to show that Chasens could have sold its assets for an amount in excess of the amount owed to M&T Bank at the time of closing. The debt to M&T Bank was approximately $4,200,000 and the consideration received by M&T Bank was just under $3,000,000[5]. M&T Bank was as familiar with the value of its own collateral as anyone. As a "sophisticated" party, M&T Bank would not have released its liens and consented

---

[5] $1,500,000 cash plus receivables of approximately $1,414,000

10

to the sale if it believed the collateral was worth more than $3,000,000 since it could have withheld sale approval and conducted a UCC sale of its collateral. In short, the chances of unsecured creditors receiving anything in a chapter 7 proceeding are next to nothing and certainly don't justify the time and expense of such of a proceeding. More significantly, should TowneBank (or any other creditor) wish to investigate the sale, it need only file a collection lawsuit and conduct discovery. Using involuntary bankruptcy as a back-door discovery mechanism is improper and ridiculously inefficient.

43. The same facts that led the court in <u>Audio Visual Workshop</u> to dismiss an involuntary petition are before the Court in this case. As with <u>Audio Visual Workshop,</u> Chasens has numerous creditors, with only a few joining in an involuntary petition. HMU, LLC holds a claim of around $143,660.95. Systems Connection holds a claim of around $204,330. Evironamics holds a claim of around $164,176.29. Over a hundred other creditors hold other substantial claims. Significantly, none of these creditors have filed actions, as they understand that the business stopped operating almost four (4) months ago and had no significant unencumbered assets. As in <u>Audio Visual Workshop,</u> Chasens also considered a Chapter 11 proceeding before recognizing that reorganization was unrealistic. Chasens wound up its affairs and disposed of its assets by paying its only secured creditor in a manner similar to the debtor in <u>Audio Visual Workshop</u> that led the court in that case to conclude that abstention was the best interests of the debtor and creditors.

44. As in <u>Audio Visual Workshop,</u> Petitioners' only apparent motivation for the involuntary petition is to upset the Sale in bankruptcy. As noted, the filing of an involuntary bankruptcy is an improper forum for such an expedition. <u>In re A. Ray Reid</u>, 107 B.R. 79 (Bankr. E.D. Va. 1989). Again, should Petitioners desire to contest the Sale, they are not without redress

given the availability of a proceeding in state court to set aside the Sale as a voluntary or fraudulent conveyance under Virginia Code § 55-80 or -81.

45. The proceeds from the Sale were properly applied to Chasens' sole secured creditor, M&T Bank. If any further assets are obtained, - which is unlikely - such proceeds will be paid to M&T Bank until that claim is paid in full. Since M&T Bank is still owed approximately $1.3 million, the chances of any entity besides M&T Bank receiving anything are nil and that outcome will not change in a Chapter 7 proceeding.

46. Finally, if the Court accepts jurisdiction in this action, Chasens' creditors as a whole will be prejudiced because the Petitioners do not represent the interests of *all* of Chasens' creditors.

### D. **In the event of a dismissal, the Petitioners are liable to Chasens for legal expenses incurred in this proceeding.**

47. Should the Court dismiss the Involuntary Petition, Chasens is entitled to recover its reasonable attorney's fees and costs from the Petitioners pursuant to 11 U.S.C. 303(i). Section 303(i) states, in pertinent part:

> (i) If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—
>
> (1) against the petitioners and in favor of the debtor for--
>   (A) costs; or
>   (B) a reasonable attorney's fee; . . .

11 U.S.C. § 303(i)(1) (2007).

48. Chasens has not waived its right to judgment under 11 U.S.C. § 303 and the Petitioners have not consented to the dismissal of the Involuntary Petition. Thus, the requirements of § 303(i) are satisfied.

49. Upon dismissal of an involuntary bankruptcy proceeding, courts have held that awarding the debtor its costs *and* reasonable attorney's fees is appropriate, regardless of whether the petitioning creditors filed the involuntary petition in bad faith. In re Jett, 206 B.R. 407, 409 (Bankr. E.D. Va. 1997) (awarding debtor's counsel $11,602.50 for reasonable attorney's fees and $405.32 in costs); see also Higgins v. Vortex Fishing Systems, Inc., 379 F.3d 701, 707 (9th Cir. 2004) (affirming the bankruptcy court's award of costs and attorney's fees to the debtor, stating that "any petitioning creditor in an involuntary case . . . should expect to pay the debtor's attorney's fees and costs if the petition is dismissed").

50. Accordingly, if the Court dismisses the Involuntary Petition, Chasens is entitled to recover from the Petitioners its reasonable attorney's fees and costs incurred in this proceeding.

WHEREFORE, for the foregoing reasons, debtor, Chasens Business Interiors, Inc., respectfully requests that this Court dismiss the Involuntary Petition against it with prejudice, or alternatively, abstain from hearing the Involuntary Petition, award Chasens its reasonable costs and attorney's fees incurred herein, and grant it such other and further relief as may be appropriate.

CHASENS BUSINESS INTERIORS, INC.

By: _____/s/ David K. Spiro_____

David K. Spiro, Esquire (VSB #28152)
Nathaniel L. Story, Esquire (VSB #77365)
HIRSCHLER FLEISCHER, P.C.
The Edgeworth Building
2100 East Cary Street
Post Office Box 500
Richmond, VA 23218-0500
(804) 771-9500
(804) 644-0957 (fax)
*Counsel for Chasens Business Interiors, Inc., appearing specially*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 19, 2009, a true copy of the foregoing was served electronically, by e-mail and/or mailed, postage prepaid, to:

>Richard E. Biemiller
>Wolcott Rivers Gates
>Convergence Center IV
>301 Bendix Road, Suite 500
>Virginia Beach, VA 23452
>
>Robert B. Van Arsdale
>Office of the United States Trustee
>600 East Main Street, Suite 301
>Richmond, Virginia 23219

/s/ David K. Spiro

#2829190 v4    035217.00001